**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROBERT WINOGRAD, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FTD COMPANIES, INC., ROBERT S. APATOFF, CHRISTOPHER W. SHEAN, and BECKY A. SHEEHAN,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Robert Winograd ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding FTD Companies, Inc. ("FTD" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired FTD securities between March 13, 2015 and March 14, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. FTD is a floral and gifting company. The Company provides floral, gift and related products and services to consumers, retail florists, and other retail locations primarily in the U.S., Canada, the U.K., and the Republic of Ireland.

3. Founded in 1910, the Company was formerly known as "UNOL Intermediate, Inc.," and later changed its name to FTD Companies, Inc. FTD is headquartered in Downers Grove, Illinois and the Company's stock trades on the NASDAQ under the ticker symbol "FTD."

4. In December 2014, FTD announced the closing of its acquisition of Provide Commerce ("Provide"), a floral and gifting business previously owned by Liberty Interactive Corporation ("Liberty Interactive").

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) FTD's financial statements contained errors relating to the assessment of cross-border indirect taxes; (ii) in turn, the Company lacked effective internal controls over financial reporting; (iii) FTD had overstated the benefits of the Provide acquisition; and (iv) as a result of the foregoing, FTD's public statements were materially false and misleading at all relevant times.

6. On March 14, 2017, post-market, FTD issued a press release and filed a Current Report on Form 8-K with the SEC, entitled "FTD Companies, Inc. Announces Fourth Quarter and Full Year 2016 Financial Results," announcing certain of the Company's financial and operating results for the quarter and year ended December 31, 2016. FTD also announced that, due to identified errors, the Company will restate previously reported consolidated financial statements for the years ended December 31, 2015 and 2014 and for the quarters in the years ended December 31, 2015 and 2016. The press release stated, in relevant part:

> **Fourth Quarter Results**
>
> Consolidated revenues were $280.7 million for the fourth quarter of 2016, compared to $297.3 million for the fourth quarter of 2015. Changes in foreign currency exchange rates negatively impacted 2016 fourth quarter revenues by $7.8 million. ***The decrease in consolidated revenues was due to decreases in revenues in the Provide Commerce and Consumer segments.*** Revenues in the Florist segment and the International segment, excluding foreign currency fluctuations, for the fourth quarter of 2016 were relatively flat compared to the prior year period.
>
> Net loss was $86.4 million for the fourth quarter of 2016, compared to a net loss of $82.6 million for the fourth quarter of 2015. ***Net losses in the fourth quarters of both 2016 and 2015 were primarily due to goodwill impairment charges related to the Provide Commerce segment of $84.0 million and $85.0 million***, respectively. Adjusted Net Income for the fourth quarter of 2016 was $13.3 million, compared to $15.2 million for the same period of the prior year. Adjusted Net Income excludes the after-tax impact of stock-based compensation, amortization, transaction-related costs, litigation and dispute settlement charges, restructuring and other exit costs, and impairment of goodwill and intangible assets.
>
> . . .
>
> **Full Year Results**
>
> Consolidated revenues were $1.12 billion for the year ended December 31, 2016, compared to $1.22 billion for the prior year. ***The decrease in consolidated revenues compared to the prior year was primarily due to a decrease in revenues in the Provide Commerce and Consumer segments.*** Changes in foreign currency exchange rates negatively impacted revenues by $18.7 million for the year ended December 31, 2016.
>
> . . .
>
> **Segment Results**

. . .

***Provide Commerce Segment:*** Provide Commerce segment revenues for the fourth quarter of 2016 decreased 2.9% to $139.0 million, compared to $143.1 million for the fourth quarter of 2015. This decline was due to a 1.5% decrease in consumer orders and a 1.4% decrease in average order value to $37.09. The decline in segment revenues was due to a decline in the ProFlowers business of 16.5%, partially offset by increases in revenues in the Personal Creations and Gourmet Foods businesses of 7.0% and 3.2%, respectively, compared to the prior year quarter. Provide Commerce segment operating income was $13.1 million, or 9.4% of segment revenues, for the fourth quarter of 2016, compared to operating income of $12.5 million, or 8.7% of segment revenues, for the prior year quarter.

Provide Commerce segment revenues for the year ended December 31, 2016 decreased 9.2% to $529.7 million, compared to $583.3 million for the prior year. This decline was due to an 8.6% decrease in consumer orders and a 1.1%, or $0.52, decrease in average order value to $45.50. The decline in revenues in the Provide Commerce segment for 2016 was due to a 17.3% and 1.6% decline in revenues in the ProFlowers and Gourmet Foods businesses, respectively, partially offset by a 7.7% increase in revenues in the Personal Creations business. Provide Commerce segment revenues for 2016 were negatively impacted by the aforementioned Sunday timing of the Valentine's Day holiday as well as lower order volumes due to reductions in marketing spend. Provide Commerce segment operating income was $40.5 million, or 7.6% of segment revenues, for the year ended December 31, 2016, compared to $41.8 million, or 7.2% of segment revenues, for the prior year.

. . .

**Immaterial Restatement of Prior Period Financial Statements**

The Company also announced today that in connection with the preparation of the financial statements for the year ended December 31, 2016, immaterial errors were identified relating to the assessment of cross-border indirect taxes that affected prior periods. ***Certain revisions have been recorded in prior periods to correct for immaterial errors on previously reported consolidated financial statements. While the Company has concluded that the impact of these errors on the Company's previously issued consolidated financial statements was not material, the Company has determined to revise its previously-reported consolidated financial statements for the years ended December 31, 2015 and 2014 and the quarters in the years ended December 31, 2016 and 2015 to correct for these immaterial errors***. Please refer to the tables in this press release for further information relating to these revisions to prior periods. In addition, as a result of these immaterial errors, the cumulative effect of the changes to retained earnings as of January 1, 2014, the earliest date presented in the consolidated financial statements for the year ended December 31, 2016, was a reduction of $12.4 million.

(Emphases added.)

7. On this news, FTD's share price fell $5.54, or 23.69%, to close at $17.85 on March 15, 2017.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). FTD's principal executive offices are located within this Judicial District.

12. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13. Plaintiff, as set forth in the attached Certification, acquired FTD securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14. Defendant FTD is incorporated in Delaware. The Company's principal executive offices are located at 3113 Woodcreek Drive, Downers Grove, Illinois 60515. FTD's shares trade on the NASDAQ under the ticker symbol "FTD."

15. Defendant Robert S. Apatoff ("Apatoff") served as the Company's CEO and President from November 2008 to November 2016.

16. Defendant Christopher W. Shean ("Shean") served as the Company's Interim President and CEO from November 2016 to March 2017.

17. Defendant Becky A. Sheehan ("Sheehan") served as the Company's Chief Financial Officer and Executive Vice President from November 2013 to December 2016.

18. The defendants referenced above in ¶¶ 15-17 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19. FTD Companies, Inc. is a floral and gifting company. The Company provides floral, gift and related products and services to consumers, retail florists, and other retail locations primarily in the U.S., Canada, the U.K., and the Republic of Ireland.

20. In December 2014, FTD announced the closing of its acquisition of Provide Commerce, a floral and gifting business previously owned by Liberty Interactive.

### Materially False and Misleading Statements Issued During the Class Period

21. The Class Period begins on March 13, 2015, when FTD filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2014 (the "2014 10-K"). For the quarter, FTD reported net income of $3.89 million, or $0.19 per diluted share, on revenue of $157.47 million,

compared to a net loss of $2.45 million, or $0.13 per diluted share, on revenue of $154.25 million for the same period in the prior year. For fiscal year 2014, FTD reported net income of $22.83 million, or $1.17 per diluted share, on revenue of $640.51 million, compared to net income of $12.5 million, or $0.67 per diluted share, on revenue of $627.34 million for fiscal year 2013.

22. In the 2014 10-K, the Company stated, in relevant part:

> **ITEM 9A. CONTROLS AND PROCEDURES**
>
> *Disclosure Controls and Procedures*
>
> Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, the Company's disclosure controls and procedures are effective in recording, processing, summarizing, and reporting, on a timely basis, information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act and are effective in ensuring that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.
>
> We acquired Provide Commerce on December 31, 2014, and have excluded Provide Commerce from our evaluation of the effectiveness of internal control over financial reporting. Accordingly, pursuant to the SEC's general guidance that an assessment of a recently acquired business may be omitted from our scope of an assessment in the year of acquisition, the scope of our assessment of the effectiveness of the Company's disclosure controls and procedures does not include Provide Commerce.
>
> *Management's Report on Internal Control Over Financial Reporting*
>
> Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act. Under the supervision and with the participation of our management, including the Chief Executive Officer and Chief Financial Officer, we conducted an evaluation of the effectiveness of the Company's internal control over financial reporting as of December 31, 2014

> based on the 2013 framework established in *Internal Control—Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). The Company's internal control over financial reporting includes policies and procedures that provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with GAAP. ***Based on our evaluation under this framework, our management concluded that the Company's internal control over financial reporting was effective as of December 31, 2014.***

(Emphasis added.)

23. The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Apatoff and Sheehan, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. On May 8, 2015, FTD filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q"). For the quarter, FTD reported net income of $2.03 million, or $0.07 per diluted share, on revenue of $367.78 million, compared to net income of $9.62 million, or $0.50 per diluted share, on revenue of $189.85 million for the same period in the prior year.

25. In the Q1 2015 10-Q, the Company stated, in relevant part:

> *Disclosure Controls and Procedures*
>
> Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, the Company's disclosure controls and procedures are effective in recording, processing, summarizing, and reporting, on a timely basis, information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act and are effective in ensuring that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management,

> including the Company's Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.
>
> As permitted by interpretive guidance issued by the Securities and Exchange Commission ("SEC") staff, companies are allowed to exclude acquired businesses from their assessment of internal control over financial reporting during the first year after completion of an acquisition while integrating the acquired company. Accordingly, as Provide Commerce was acquired by the Company on December 31, 2014, management's assessment of the effectiveness of the Company's internal control over financial reporting as of December 31, 2014 excluded Provide Commerce. Management's evaluation and conclusion as to the effectiveness of the design and operation of the Company's disclosure controls and procedures as of the end of the period covered by this report excludes any evaluation of the internal controls of Provide Commerce. Provide Commerce's assets and revenues represented approximately 52% and approximately 50% of the Company's consolidated total assets and consolidated total revenues, respectively, as of and for the three months ended March 31, 2015.
>
> *Changes in internal controls*
>
> As the Company completed the acquisition of Provide Commerce on December 31, 2014, the Company is currently evaluating the internal controls of Provide Commerce and the impact of Provide Commerce on the Company's internal control over financial reporting. Except as described in this Item 4, during the Company's most recent quarter, ***there was no change in the Company's internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting.***

(Emphasis added.)

26. The Q1 2015 10-Q contained signed certifications pursuant to SOX by Defendants Apatoff and Sheehan, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27. On August 6, 2015, FTD filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q"). For the quarter, FTD reported net income of $17.82 million, or $0.61 per

diluted share, on revenue of $365.80 million, compared to net income of $4.71 million, or $0.24 per diluted share, on revenue of $168.09 million for the same period in the prior year.

28. In the Q2 2015 10-Q, the Company stated, in relevant part:

> *Disclosure Controls and Procedures*
>
> Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, the Company's disclosure controls and procedures are effective in recording, processing, summarizing, and reporting, on a timely basis, information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act and are effective in ensuring that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management, including the Company's Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.
>
> As permitted by interpretive guidance issued by the Securities and Exchange Commission ("SEC") staff, companies are allowed to exclude acquired businesses from their assessment of internal control over financial reporting during the first year after completion of an acquisition while integrating the acquired company. Accordingly, as Provide Commerce was acquired by the Company on December 31, 2014, management's assessment of the effectiveness of the Company's internal control over financial reporting as of December 31, 2014 excluded Provide Commerce. Management's evaluation and conclusion as to the effectiveness of the design and operation of the Company's disclosure controls and procedures as of the end of the period covered by this report excludes any evaluation of the internal controls of Provide Commerce. Provide Commerce's assets and revenues represented approximately 49% and approximately 52% of the Company's consolidated total assets and consolidated total revenues, respectively, as of and for the six months ended June 30, 2015.
>
> *Changes in internal controls*
>
> As the Company completed the acquisition of Provide Commerce on December 31, 2014, the Company continues to evaluate the internal controls of Provide Commerce and the impact of Provide Commerce on the Company's internal control over financial reporting. Except as described in this Item 4, during the Company's most recent quarter, ***there was no change in the Company's internal control over financial reporting that has materially affected, or is***

> ***reasonably likely to materially affect, the Company's internal control over financial reporting.***

(Emphasis added.)

29. The Q2 2015 10-Q contained signed certifications pursuant to SOX by Defendants Apatoff and Sheehan, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30. On November 6, 2015, FTD filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 10-Q"). For the quarter, FTD reported a net loss of $16.48 million, or $0.57 per diluted share, on revenue of $188.52 million, compared to net income of $4.61 million, or $0.24 per diluted share, on revenue of $125.10 million for the same period in the prior year.

31. In the Q3 2015 10-Q, the Company stated, in relevant part:

> *Disclosure Controls and Procedures*
>
> Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, the Company's disclosure controls and procedures are effective in recording, processing, summarizing, and reporting, on a timely basis, information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act and are effective in ensuring that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management, including the Company's Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.
>
> As permitted by interpretive guidance issued by the Securities and Exchange Commission ("SEC") staff, companies are allowed to exclude acquired businesses from their assessment of internal control over financial reporting during the first year after completion of an acquisition while integrating the acquired company. Accordingly, as Provide Commerce was acquired by the Company on

> December 31, 2014, management's assessment of the effectiveness of the Company's internal control over financial reporting as of December 31, 2014 excluded Provide Commerce. Management's evaluation and conclusion as to the effectiveness of the design and operation of the Company's disclosure controls and procedures as of the end of the period covered by this report excludes any evaluation of the internal controls of Provide Commerce. Provide Commerce's assets and revenues represented approximately 50% and approximately 48% of the Company's consolidated total assets and consolidated total revenues, respectively, as of and for the nine months ended September 30, 2015.
>
> *Changes in internal controls*
>
> As the Company completed the acquisition of Provide Commerce on December 31, 2014, the Company continues to evaluate the internal controls of Provide Commerce and the impact of Provide Commerce on the Company's internal control over financial reporting. Except as described in this Item 4, during the Company's most recent quarter, ***there was no change in the Company's internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting.***

(Emphasis added.)

32. The Q3 2015 10-Q contained signed certifications pursuant to SOX by Defendants Apatoff and Sheehan, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33. On March 11, 2016, FTD filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K"). For the quarter, FTD reported a net loss of $82.20 million, or $2.90 per diluted share, on revenue of $297.65 million, compared to net income of $3.89 million, or $0.19 per diluted share, on revenue of $157.47 million for the same period in the prior year. For fiscal year 2015, FTD reported a net loss of $78.83 million, or $2.74 per diluted share, on revenue of $1.21 billion, compared to net income of $22.83 million, or $1.17 per diluted share, on revenue of $640.51 million for fiscal year 2014.

34. In the 2015 10-K, the Company stated, in relevant part:

**ITEM 9A. CONTROLS AND PROCEDURES**

*Disclosure Controls and Procedures*

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, the Company's disclosure controls and procedures are effective in recording, processing, summarizing, and reporting, on a timely basis, information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act and are effective in ensuring that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

*Changes in Internal Control over Financial Reporting*

We acquired Provide Commerce on December 31, 2014. In conjunction with the audit of the December 31, 2013 financial statements, material weaknesses related to: the technical accounting competency of the accounting department; the adequacy of staffing and qualifications of the accounting department; and ineffective general information technology controls were identified by Provide Commerce's external auditor.

In fiscal year 2015, the Company implemented internal controls to address the weaknesses in the competency and staffing of the accounting department as well as the general information technology controls. ***We concluded that no material weaknesses exist as of December 31, 2015***. Except for the items described above, there have been no changes in our internal control over financial reporting identified in connection with the evaluation required by Rule 13a-15(d) and 15d-15(d) of the Exchange Act that occurred during the three months ended December 31, 2015 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

*Management's Report on Internal Control Over Financial Reporting*

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act. Under the supervision and with the participation of our management, including the Chief Executive Officer and Chief Financial Officer, we conducted an evaluation of the effectiveness of the Company's internal control over financial reporting as of December 31, 2015

> based on the 2013 framework established in *Internal Control—Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). The Company's internal control over financial reporting includes policies and procedures that provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with GAAP. ***Based on our evaluation under this framework, our management concluded that the Company's internal control over financial reporting was effective as of December 31, 2015.***

(Emphasis added.)

35. The 2015 10-K contained signed certifications pursuant to SOX by Defendants Apatoff and Sheehan, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

36. On May 6, 2016, FTD filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q"). For the quarter, FTD reported net income of $2.09 million, or $0.07 per diluted share, on revenue of $330.60 million, compared to net income of $2.03 million, or $0.07 per diluted share, on revenue of $367.78 million for the same period in the prior year.

37. In the Q1 2016 10-Q, the Company stated, in relevant part:

> *Disclosure Controls and Procedures*
>
> Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, the Company's disclosure controls and procedures are effective in recording, processing, summarizing, and reporting, on a timely basis, information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act and are effective in ensuring that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management, including the Company's Chief Executive Officer

> and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

38. The Q1 2016 10-Q contained signed certifications pursuant to SOX by Defendants Apatoff and Sheehan, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

39. On August 5, 2016, FTD filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q"). For the quarter, FTD reported net income of $12.10 million, or $0.43 per diluted share, on revenue of $338.57 million, compared to net income of $17.82 million, or $0.61 per diluted share, on revenue of $365.80 million for the same period in the prior year.

40. In the Q2 2016 10-Q, the Company stated, in relevant part:

> *Disclosure Controls and Procedures*
>
> Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, the Company's disclosure controls and procedures are effective in recording, processing, summarizing, and reporting, on a timely basis, information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act and are effective in ensuring that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management, including the Company's Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

41. The Q2 2016 10-Q contained signed certifications pursuant to SOX by Defendants Apatoff and Sheehan, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

42. On November 8, 2016, FTD filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q"). For the quarter, FTD reported a net loss of $9.97 million, or $0.36 per diluted share, on revenue of $173.15 million, compared to a net loss of $16.48 million, or $0.57 per diluted share, on revenue of $188.52 million for the same period in the prior year.

43. In the Q3 2016 10-Q, the Company stated, in relevant part:

> *Disclosure Controls and Procedures*
>
> Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, the Company's disclosure controls and procedures are effective in recording, processing, summarizing, and reporting, on a timely basis, information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act and are effective in ensuring that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management, including the Company's Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

44. The Q3 2016 10-Q contained signed certifications pursuant to SOX by Defendants Shean and Sheehan, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45. The statements referenced in ¶¶ 21-44 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) FTD's financial statements contained errors relating to the assessment of cross-border indirect

taxes; (ii) in turn, the Company lacked effective internal controls over financial reporting; (iii) FTD had overstated the benefits of the Provide acquisition; and (iv) as a result of the foregoing, FTD's public statements were materially false and misleading at all relevant times.

**<u>The Truth Emerges</u>**

46. On March 14, 2017, post-market, FTD issued a press release and filed a Current Report on Form 8-K with the SEC, entitled "FTD Companies, Inc. Announces Fourth Quarter and Full Year 2016 Financial Results," announcing certain of the Company's financial and operating results for the quarter and year ended December 31, 2016. FTD also announced that, due to identified errors, the Company will restate previously reported consolidated financial statements for the years ended December 31, 2015 and 2014 and for the quarters in the years ended December 31, 2015 and 2016. The press release stated, in relevant part:

> **Fourth Quarter Results**
>
> Consolidated revenues were $280.7 million for the fourth quarter of 2016, compared to $297.3 million for the fourth quarter of 2015. Changes in foreign currency exchange rates negatively impacted 2016 fourth quarter revenues by $7.8 million. ***The decrease in consolidated revenues was due to decreases in revenues in the Provide Commerce and Consumer segments.*** Revenues in the Florist segment and the International segment, excluding foreign currency fluctuations, for the fourth quarter of 2016 were relatively flat compared to the prior year period.
>
> Net loss was $86.4 million for the fourth quarter of 2016, compared to a net loss of $82.6 million for the fourth quarter of 2015. ***Net losses in the fourth quarters of both 2016 and 2015 were primarily due to goodwill impairment charges related to the Provide Commerce segment of $84.0 million and $85.0 million***, respectively. Adjusted Net Income for the fourth quarter of 2016 was $13.3 million, compared to $15.2 million for the same period of the prior year. Adjusted Net Income excludes the after-tax impact of stock-based compensation, amortization, transaction-related costs, litigation and dispute settlement charges, restructuring and other exit costs, and impairment of goodwill and intangible assets.
>
> . . .
>
> **Full Year Results**

Consolidated revenues were $1.12 billion for the year ended December 31, 2016, compared to $1.22 billion for the prior year. ***The decrease in consolidated revenues compared to the prior year was primarily due to a decrease in revenues in the Provide Commerce and Consumer segments***. Changes in foreign currency exchange rates negatively impacted revenues by $18.7 million for the year ended December 31, 2016.

. . .

**Segment Results**

. . .

***Provide Commerce Segment:*** Provide Commerce segment revenues for the fourth quarter of 2016 decreased 2.9% to $139.0 million, compared to $143.1 million for the fourth quarter of 2015. This decline was due to a 1.5% decrease in consumer orders and a 1.4% decrease in average order value to $37.09. The decline in segment revenues was due to a decline in the ProFlowers business of 16.5%, partially offset by increases in revenues in the Personal Creations and Gourmet Foods businesses of 7.0% and 3.2%, respectively, compared to the prior year quarter. Provide Commerce segment operating income was $13.1 million, or 9.4% of segment revenues, for the fourth quarter of 2016, compared to operating income of $12.5 million, or 8.7% of segment revenues, for the prior year quarter.

Provide Commerce segment revenues for the year ended December 31, 2016 decreased 9.2% to $529.7 million, compared to $583.3 million for the prior year. This decline was due to an 8.6% decrease in consumer orders and a 1.1%, or $0.52, decrease in average order value to $45.50. The decline in revenues in the Provide Commerce segment for 2016 was due to a 17.3% and 1.6% decline in revenues in the ProFlowers and Gourmet Foods businesses, respectively, partially offset by a 7.7% increase in revenues in the Personal Creations business. Provide Commerce segment revenues for 2016 were negatively impacted by the aforementioned Sunday timing of the Valentine's Day holiday as well as lower order volumes due to reductions in marketing spend. Provide Commerce segment operating income was $40.5 million, or 7.6% of segment revenues, for the year ended December 31, 2016, compared to $41.8 million, or 7.2% of segment revenues, for the prior year.

. . .

**Immaterial Restatement of Prior Period Financial Statements**

The Company also announced today that in connection with the preparation of the financial statements for the year ended December 31, 2016, immaterial errors were identified relating to the assessment of cross-border indirect taxes that affected prior periods. ***Certain revisions have been recorded in prior periods to correct for immaterial errors on previously reported consolidated financial statements. While the Company has concluded that the impact of these errors on the Company's previously issued consolidated financial statements was not material, the Company has determined to revise its previously-reported***

> ***consolidated financial statements for the years ended December 31, 2015 and 2014 and the quarters in the years ended December 31, 2016 and 2015 to correct for these immaterial errors***. Please refer to the tables in this press release for further information relating to these revisions to prior periods. In addition, as a result of these immaterial errors, the cumulative effect of the changes to retained earnings as of January 1, 2014, the earliest date presented in the consolidated financial statements for the year ended December 31, 2016, was a reduction of $12.4 million.

(Emphases added.)

47. On this news, FTD's share price fell $5.54, or 23.69%, to close at $17.85 on March 15, 2017.

48. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired FTD securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

50. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, FTD securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class

may be identified from records maintained by FTD or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

52. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;
- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of FTD;
- whether the Individual Defendants caused FTD to issue false and misleading financial statements during the Class Period;
- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of FTD securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

55. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- FTD securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold FTD securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

56. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

58. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of FTD securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire FTD securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

61. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for FTD securities. Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about FTD's finances and business prospects.

62. By virtue of their positions at FTD, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of FTD, the Individual Defendants had knowledge of the details of FTD's internal affairs.

64. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of FTD. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to FTD's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of FTD securities was artificially inflated throughout the Class Period. In ignorance of the

adverse facts concerning FTD's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired FTD securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

65. During the Class Period, FTD securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of FTD securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of FTD securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of FTD securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

68. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69. During the Class Period, the Individual Defendants participated in the operation and management of FTD, and conducted and participated, directly and indirectly, in the conduct of FTD's business affairs. Because of their senior positions, they knew the adverse non-public information about FTD's misstatement of income and expenses and false financial statements.

70. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to FTD's financial condition and results of operations, and to correct promptly any public statements issued by FTD which had become materially false or misleading.

71. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which FTD disseminated in the marketplace during the Class Period concerning FTD's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause FTD to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of FTD within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of FTD securities.

72. Each of the Individual Defendants, therefore, acted as a controlling person of FTD. By reason of their senior management positions and/or being directors of FTD, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, FTD to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of FTD and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by FTD.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 20, 2017

Respectfully submitted,

*/s/ Louis C. Ludwig*

Louis C. Ludwig
Patrick V. Dahlstrom
**POMERANTZ LLP**
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Email: pdahlstrom@pomlaw.com
Email: lcludwig@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: hchang@pomlaw.com

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
Sherin Mahdavian
1999 Avenue of the Stars
Los Angeles, California 90067
Suite 1100
Telephone: 1-800-977-7401
Fax: 1-800-536-0065
Email: michael@goldberglawpc.com
Email: brian@goldberglawpc.com
Email: sherin@goldberglawpc.com

***Attorneys for Plaintiff***